

**FILED**

*4:37 pm, 7/15/14*

**Stephan Harris**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BTU WESTERN RESOURCES, INC.; and SCHOOL CREEK COAL RESOURCES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BERENERGY CORPORATION; ZAB, INC; DAVEN CORPORATION; ZALMAN RESOURCES, INC; and SPORT RESOURCES, INC., <br><br> Defendants. | Case No. 2:13–CV–00098–ABJ |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF FEDERAL QUESTION JURISDICTION**

This case arises from the dispute between plaintiff federal coal lessees and defendant federal oil and gas lessees. Plaintiffs instituted this action seeking an order allowing them to mine through defendants' oil and gas wellbores. Defendants filed the instant motions to dismiss for lack of federal question jurisdiction arguing that the Mineral Leasing Action of 1920 does not completely preempt state law and does not address the resolution of multiple mineral development conflicts. For the following reasons, Defendants' motion is **GRANTED**.

1

## BACKGROUND

The conflict in this case arises between a current oil and gas operation and an approved coal mining operation in the east half of Section 26, Township 42 North, Range 70 West, 6th Prime Meridian in Campbell County, Wyoming. Section 26 is comprised of federal surface and minerals managed by the Bureau of Land Management, and the minerals are leased pursuant to the Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. § 181 *et seq*.

Plaintiffs BTU Western Resources, Inc. ("BTU Western") and School Creek Coal Resources, LLC ("School Creek Resources") (collectively "Plaintiffs") are land and lease holding subsidiaries of Peabody Energy Corporation. Plaintiff BTU Western currently holds lease WYW-173408, which was executed on October 1, 2012. Lease WYW-173408 covers Lots 3 – 6 and 9 – 16 of Section 26. School Creek Resources currently holds Lease WYW-172413, which is a modification by partial assignment of Lease WYW-0321779. Lease WYW-0321779 was originally executed on December 1, 1966 and covers Lots 1, 2, 7, and 8 of Section 26. Additionally, one of Plaintiffs' affiliates holds a federal coal lease covering lands in Section 35, which is immediately adjacent and to the south of Section 26. That lease was issued after the Janzen Lease, and it does not overlap the Janzen Lease

The coal seam in Section 26 averages 64 feet in thickness, and it lies approximately 245 – 264 feet below the surface of the ground. In order to access the coal, the mine operators must first strip off the topsoil. They next blast the overburden with explosives. This allows them to remove the overburden and create a series of benches to ultimately expose the coal seam.

Defendants Berenergy Corporation; ZAB, Inc.; Daven Corporation, Zalman Re-sources, Inc.; and Sport Resources, Inc. (collectively "Defendants") are all working interest owners in

Federal Oil & Gas Lease WYW-4315 ("Janzen Lease"). The Janzen Lease was executed on April 13, 1967 and covers the eastern 1/2 of Section 26.

There are two wells that have been drilled on the Janzen Lease. The Janzen Govt No. 1 Oil Well ("Janzen No. 1 Well") was drilled in 1971. It is located in the NE 1/4 of Section 26. It has a casing leak and has been shut in since 2011 (but has not been plugged and abandoned). The year prior to it being shut-in, the Janzen No. 1 Well produced an average of less than 2 barrels per day of oil production.

The second well on the Janzen Lease is the Janzen No. 34-26 Oil Well (Janzen No. 34-26 Well). It is located in the SE 1/4 of Section 26 and was originally drilled in 1984. It lies the closest to Section 35 and is the first well that lies in the path of Plaintiffs' coal mining operations. The proposed depth of the Janzen 34-26 Well was 7,515 ft. During 2012, the Janzen No. 34-26 Well produced an average of 2.7 barrels of oil per day.

Plaintiffs filed their Complaint, ECF No. 1, seeking to have this Court determine the parties' relative rights under the various leases at issue. They seek a determination that their relative rights are governed by the Accommodation Doctrine and that their coal mining operations have been unreasonably interfered with by Defendants. Plaintiffs also seek an order that requires Defendants to plug and abandon the Janzen No. 1 Well and the Janzen No. 34-26 Well so that they can mine through the coal seam that currently surrounding those wellbores. Lastly, Plaintiffs seek an order preventing Defendants from interfering with their future coal mining operations.

Plaintiffs alleged that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 "because this action arises under laws of the United States" including the MLA and others. [ECF No. 1 at ¶ 9]. Plaintiffs and one or more of the Defendants are Delaware corporations, and there is no

allegation that diversity of citizenship exists. Defendants previously filed a motion to dismiss Plaintiffs' Complaint for failure to join an indispensable party and exhaust administrative remedies. [ECF Nos. 16, 22]. This Court denied that request in ECF No. 68. Defendants filed the instant motion to dismiss for lack of federal question jurisdiction, ECF No. 64, arguing that the MLA and the Bureau of Land Management's regulations issued thereunder do not completely preempt state law and do not address how to resolve disputes between mineral lessees. Plaintiffs argue that their claim for relief arises under the MLA and that jurisdiction in this Court is proper. A hearing on this matter was held on May 28, 2014. Accordingly, the Court concludes as follows.

## STANDARD OF REVIEW

Federal courts are "courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 552 (2005). A court must "presume[] that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994) (citations omitted); *see Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) ("Because the jurisdiction of federal courts is limited, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof."); *see also Raley v. Hyundai Motor Co*., 642 F.3d 1271, 1275 (10th Cir.2011) ("Where an appellant fails to lead, we have no duty to follow. It is the appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear her appeal.").

## DISCUSSION

28 U.S.C. § 1331 vests federal district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "A case 'arises under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27–28 (1983)).

In the instant case, it seems undisputed that the Mineral Leasing Act does not create an explicit cause of action for one private mineral lessee to sue another. *Cf. Pullman v. Chorney*, 712 F.2d 447, 450 (10th Cir.1983) (no explicit or implied private cause of action to enforce leasing regulations promulgated under the MLA); *Naartex Consulting Corp. v. Watt*, 542 F.Supp. 1196, 1202–03 (D.D.C.1982) ("Congress did not intend to create a private right of action to police transgressions of the [MLA] by private parties."), *aff'd* 722 F.2d 779 (D.C.Cir.1983). Plaintiffs have not identified a specific statute that guides courts in the resolution of multiple mineral development conflicts or establishes jurisdiction in this Court. Instead, they refer generally to statutes and regulations which allow the government to grant separate leases for different minerals contained within the same tract of land. [ECF No. 76 at 11]. They cite to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2, but the Declaratory Judgment Act does not confer any "additional subject matter jurisdiction on the Federal Courts." *McGrath v. Weinberger*, 541 F.2d 249, 252 (10th Cir. 1976).

Plaintiffs principally contend that the Tenth Circuit's decision in *Mountain Fuel Supply Co. v. Smith*, 471 F.2d 594 (10th. 1973), establishes federal jurisdiction in this case. However,

*Mountain Fuel Supply* is rather easily distinguished. In that case, the plaintiff mineral lessees asked the court to enjoin the defendant surface owners from interfering with the plaintiffs' use of a road on defendants' property. The plaintiffs used the road to haul oil from producing wells in a unitized tract. The central issue of that case was whether 30 U.S.C. § 122's reservation of reasonably necessary surface use allowed the oil and gas operators to use the surface of the unitized tract. Thus, the case called for a rather straightforward interpretation of federal statutory language and that interpretation's application to the case's facts. In the instant matter, Plaintiffs are not asking for the interpretation of a federal statute. They are, instead, asking this Court to determine the parties' relative rights under their respective federal mineral leases based on the language in their leases.

In this way, Plaintiffs are asking this Court to create a federal common law Accommodation Doctrine based on the language in their respective leases. Plaintiffs do not cite to any specific statutory or regulatory language that would give rise to this doctrine. The centerpiece of Plaintiffs' case is the Supreme Court's dicta in *Amoco Production Co. v. Southern Ute Indian Tribe*, 526 U.S. 865, 879 (1999), which approves this alleged federal doctrine, but two points quickly derail this argument. First, the Supreme Court expressly recognized its statement as dicta: the right of one mineral estate owner "to use, and even damage, a neighboring estate as necessary and reasonable to the extraction of his own minerals . . . *is not the issue before us*, however. The question is one of ownership, not of damage or injury." *Id.* (emphasis added). Second, the Supreme Court cited a state law case, *Williams v. Gibson*, 84 Ala. 228, 4 So. 350 (1888), to support its interpretation of the Accommodation Doctrine. After extensive briefing, it seems quite clear that the Accommodation Doctrine is a traditional state law doctrine. *See e.g., Chartiers Block Coal Co. v. Mellon*, 25 A. 597 (Pa. 1893); *Getty Oil Co. v. Jones*, 470

S.W.2d 618 (Tex. 1971); *Hunt Oil Co. v. Kerbaugh*, 283 N.W.2d 131 (N.D. 1979). Thus, Plaintiffs' specific claim for relief "is not a prescription of federal law" that creates a federal cause of action. *Empire*, 547 U.S. at 696.

The Supreme Court has recognized, however, that "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues" in certain cases. *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This doctrine recognizes "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* Federal question jurisdiction may attach under the "substantial question" branch when a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

Admittedly, applying this second test to the case at hand is difficult. Plaintiffs' assertion of federal question jurisdiction has some intuitive appeal. Plaintiffs' coal leases and Defendants' oil and gas lease were both created by the Mineral Leasing Act. Their respective operations are approved and regulated by the Bureau of Land Management. However, this sort of broad analysis is inappropriate. The specific issue in this case is the relative rights of the parties under their respective leases.

Plaintiffs have not demonstrated that the MLA addresses this specific dispute, and they have not cited any regulations promulgated thereunder that do either. Plaintiffs are asking this Court to create a federal common law rule of accommodation, but they have not established that the MLA, or any other federal law, has preempted state law with regards to multiple mineral

7

conflicts. *Contra Texas Oil & Gas Corp. v. Phillips Petroleum Co.*, 406 F.2d 1303, 1304 (10th Cir. 1969) ("State law and the State police power extends over the federal public domain within its boundaries until preempted, and only to the extent preempted, by federal law."). On the other hand, 30 U.S.C. § 187's reservation clause seems to indicate that Wyoming state law should apply to Plaintiffs claim for relief because none of its "provisions shall be in conflict with the laws of the State in which the leased property is situated."

> Although the Constitution empowers Congress to regulate federal lands, U.S.Const. art. IV, s 3, cl. 2, Congress determines whether or not to exercise this power. *Texas Oil & Gas Corp. v. Phillips Petroleum Co.*, 277 F.Supp. 366, 368 (W.D.Okla.1967), *aff'd per curiam*, 406 F.2d 1303 (10th Cir.), *cert. denied*, 396 U.S. 829, 90 S.Ct. 80, 24 L.Ed.2d 80 (1969). Through the Mineral Lands Leasing Act of 1920, codified at 30 U.S.C. §§ 181-263, Congress has prescribed limited, *but not exclusive*, controls over the leasing of federal lands for oil and gas production. *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966); *Texas Oil & Gas*, 277 F.Supp. at 369.

*Kirkpatrick Oil & Gas Co. v. U. S.*, 675 F.2d 1122, 1124 (10th Cir. 1982) (emphasis added).

Where "[t]here is no federal statute governing disputes between private individuals regarding rights to [mineral] leases, and in such instance, where no right of the federal government is involved," there is no federal law to apply. *Bolack v. Underwood*, 340 F.2d 816, 820 (10th Cir. 1965); *see also O'Kane v. Walker*, 561 F.2d 207, 211 (10th Cir. 1977). Plaintiffs attempt to evade this unfortunate fact by arguing that Defendants have not explained how the lessees' respective rights "could possibly involve something other than federal law," but that is not Defendants' burden to bear. Plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing federal jurisdiction. *See Merida Delgado*, 428 F.3d at 919. Because there is no federal law to apply, Plaintiffs' accommodation claim does not "necessarily raise a federal issue."

As above, Plaintiffs have not demonstrated that state law has been preempted with regards to multiple mineral conflicts. Further, they have not identified any conflict between state

policy and federal policy is this legal area, and they have not demonstrated how state law and the state courts would not be up to the task of handling this dispute. Thus, the Court does not see how it could create a federal Accommodation Doctrine "without disturbing any congressionally approved balance of federal and state judicial responsibilities."

The Supreme Court has described the "substantial question" branch of federal question jurisdiction as a "special and small category" of cases. *Empire*, 547 U.S. at 699. It has also called it a "slim category." *Id.* at 701. The Tenth Circuit has noted that "[t]he 'substantial question' branch of federal question jurisdiction is exceedingly narrow." *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012). In this instance, it simply does not seem that Plaintiffs' claim fits within this narrow category.

The facts of *Grable* and *Empire* support this conclusion. *Grable* involved the seizure and sale of real property to satisfy a federal tax delinquency. *Grable*, 545 U.S. at 310. The previous owner of the property, Grable, sued the purchaser alleging that the IRS had not notified Grable of the property's seizure in the exact manner required by the applicable statute, 26 U.S.C. § 6335. Thus, the central issue in *Grable* was whether a federal cause of action was required to invoke federal question jurisdiction. The Supreme Court held that a federal cause of action is not required generally. Specific to Grable's case, the Supreme Court held that whether Grable was given proper notice within the statute's meaning was "an essential element of its quiet title claim," and the statute's meaning was actually in dispute. *Grable*, 545 U.S. at 315. Furthermore, the Supreme Court said that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court" because of the Government's "strong" interests in collecting taxes and that only "rare state title case[s]" would "raise a contested issue of federal law." *Id.*

9

The *Empire* case was decided nearly a year later and served to further delineate the boundaries of "substantial question" jurisdiction. *Empire* involved a health insurer, Empire, who sued its former insured's estate in federal court. The insured deceased had been a federal employee to whom Empire had provided health insurance coverage pursuant to the Federal Employees Health Benefits Act of 1959 (FEHBA), 5 U.S.C. § 8901 *et seq.* The contract between Empire and the Office of Personnel Management delineated Empire's subrogation and recovery rights. The insured decedent's estate had brought a state court tort action against parties who had allegedly caused the decedent's injuries in a prior accident.

After the estate settled its claim, Empire sued the estate to recover the sum it had paid out for the insured's medical care. Empire alleged that its claim for reimbursement, which arose from its contract with OPM, stated a federal claim "because Congress intended all rights and duties stemming from that contract to be 'federal in nature.'" *Empire*, 547 U.S. at 693. The Supreme Court held that Empire's claim was not created by federal law and that federal law was not a necessary element of Empire's claim for relief. *Id.* at 699-701. The *Empire* court noted that "*Grable* presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases'" because Grable's claim turned on the meaning of a federal statute. *Id.* at 700. It contrasted Empire's reimbursement claims as "fact-bound and situation-specific." *Id.* at 701.

The instant case resembles *Empire* much more than it does *Grable*. Plaintiffs do not cite any specific federal statutory language which has a disputed meaning and that is necessary to establish their claim. *Contra Grable*, 545 U.S. at 315. Instead, their mineral lease is a "contract [which] could be described as 'federal in nature' because it is negotiated by a federal agency and concerns federal" minerals. *Empire*, 547 U.S. at 696. However, the right of accommodation that

Plaintiffs seek "is not a prescription of federal law." *Id.* Instead of a "pure issue of law" like the one in *Grable*, Plaintiffs' case, and any similar cases that follow, will depend on the various lease terms and stipulations. In other words, the resolution of their case will be "fact-bound and situation specific." *Empire*, 547 U.S. at 701.

To avoid this conclusion, Plaintiffs try to argue that Defendants conceded federal question jurisdiction earlier in the case in a filing. However, subject matter jurisdiction "involves a court's power to hear a case, [and it] can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Plaintiffs also try to argue that two of this Court's previous orders support that federal question jurisdiction is proper in this case. First, federal question jurisdiction was not argued and not analyzed in this Court's previous order in this case. [*See* ECF No. 68]. Second, federal question jurisdiction was not the issue in this Court's order in a previous case, Jacob's Ranch Coal Co. v. M&K Oil Company, Inc., Case No. 99-CV-118-J, ECF No. 58 (D.Wyo. Dec. 10, 1999). Thus, neither of those orders even lend persuasive support to Plaintiffs' argument that federal question jurisdiction is proper is this case. In the end, Plaintiffs have simply not satisfied their burden of establishing that this Court properly has subject matter jurisdiction of the instant action.

## CONCLUSION

This Court lacks federal question jurisdiction because federal law does not create Plaintiffs' claim for relief and Plaintiff's right to relief does not necessarily depend on the resolution of a substantial question of federal law. Accordingly, Defendants' Motions to Dismiss for Lack of Federal Question Jurisdiction, ECF Nos. 64 and 66, are hereby **GRANTED**. Plaintiffs Complaint is hereby **DISMISSED WITH PREJUDICE**. Plaintiffs' motion for partial summary judgment, ECF No. 52, is rendered **MOOT** and therefore **DENIED**.

Because the Court lacks federal question jurisdiction in the instant case, 13-CV-98, it concludes that it improperly granted removal in the related case *Berenergy Corp. v. BTU Western Resources, Inc. et al.*, 14-CV-116-J.  Berenergy's Motion to Remand, ECF No. 15, in that case is, therefore, **GRANTED**.  Accordingly, 14-CV-116-J is hereby **DISMISSED** and **REMANDED** to the Sixth Judicial District Court, Campbell County, Wyoming.

Dated this 15th day of July, 2014.

_____
Alan B. Johnson
United States District Judge